IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIGID AND ANDREW PAYNE** | : | |
| | : | **CIVIL ACTION** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **COUNTY OF DELAWARE, et al.,** | : | NO. 25-295 |
| | : | |
| **Defendants.** | : | |

J. Perez   October 17, 2025

## MEMORANDUM

Before the Court is the Motion to Dismiss Plaintiffs' Amended Complaint filed by Defendants Delaware County, Pennsylvania (the "County"); Delaware County Council ("County Council"); Councilmembers Dr. Monica Taylor, Elaine Paul Schaefer, Kevin M. Madden, Christine A. Reuther, and Richard R. Womack (collectively, "Individual Councilmembers"); and County employees Solicitor Jonathan Lichtenstein, HR Director Christine Keck, Executive Director Barbara O'Malley, Edward Beebe, Regina Rodia, Anthony Mignogna, Samantha Cox, and John and Jane Does #1–10 ("Employee Defendants"; together with the Individual Councilmembers, "Individual Defendants").

Plaintiffs Brigid and Andrew Payne, Delaware County Emergency Services (DES) employees, brought nine causes of action arising from allegations of sexual harassment by Timothy Boyce, former head of DES. Brigid Payne brings Count I against all Defendants under 42 U.S.C. § 1983, alleging a substantive due process violation. Andrew Payne brings Count II against all Defendants under 42 U.S.C. § 1983, alleging a First Amendment retaliation claim. Brigid Payne

1

brings Count III against the County under Title VII of the Civil Rights Act of 1964, alleging discrimination on the basis of sex, retaliation, and maintenance of a hostile work environment. Andrew Payne brings Count IV against the County under Title VII of the Civil Rights Act of 1964, alleging retaliation. Together, the Paynes bring Count V, a negligence claim, against all Defendants; Count VI, a negligent supervision claim, against the County, County Council, and Individual Councilmembers; and Count VII, an intentional infliction of emotional distress claim against Defendant Beebe and the County. Brigid and Andrew Payne bring Counts VIII and IX, respectively, against the County, alleging violations of the Pennsylvania Human Relations Act (PHRA). Am. Compl., ECF No. 9.

On May 14, 2025, Defendants moved to dismiss Counts I–III and V–IX. Defs.' Mot. Dismiss Pls.' Am. Compl. for Failure to State a Claim ("Motion" or "Mot."), ECF No. 10. On June 13, 2025, the Paynes filed a Memorandum in Opposition to the Motion. ECF No. 17. For the reasons discussed herein, the Motion is granted in part and denied in part.

**I.     Background**[1]

The Paynes allege Boyce, the head of DES, had a well-known history and pattern of sexually harassing women in the workplace and that Defendants facilitated such conduct. ECF No. 9 ¶ 7. Despite personally observing Boyce's misconduct, certain Individual Defendants turned a blind eye and allowed him to "hide in plain sight." *Id.* Despite County Policy requiring Employee Defendants to report Boyce's behavior to Human Resources ("HR"), they failed to do so and they retaliated against the Paynes for their own reports. *See id.* ¶¶ 102–03, 155, 164.

---

[1] For the purpose of deciding this Motion, the Court accepts as true all well-pled factual allegations in the Complaint. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

2

### A. Brigid Payne

Plaintiff Brigid Payne worked in the DES "Radio Room" from 2008 until February of 2021, when she became Boyce's Executive Assistant. *Id.* ¶¶ 17–18. Mrs. Payne worked in that position for one year. *Id.* ¶ 18. In March 2022, she became an Emergency Planner. *Id.* ¶ 21. In June 2022, Mrs. Payne was moved to 911 Quality Assurance, where she was supervised by Defendants Mignogna and Cox until she was moved back to Emergency Management in August of 2023. *Id.* ¶¶ 22–23.

Mrs. Payne alleges Boyce sexually harassed her on two occasions in September 2022. In mid-September, Boyce asked her to bend over while trying on a new uniform and asked her to let him see her chest. *Id.* ¶ 30. Individual Defendants Beebe and Rodia witnessed the incident, and Rodia told Boyce, "No Tim, that is not appropriate." *Id.* ¶ 31. Yet neither reported the incident to HR. *Id.* Then, on another day, despite Mrs. Payne's obvious discomfort and protests, Boyce persistently tried to engage her in a discussion about sex, drugs, and alcohol. *Id.* ¶¶ 32–33. Mrs. Payne alleges that Defendants Beebe, Mignogna, and Cox have repeatedly denied her opportunities to advance her career, in retaliation for objecting to Boyce's behavior and for filing EEOC charges against the County. *Id.* ¶ 28.

On or about June 2, 2024, Mrs. Payne dual-filed claims with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), alleging "sex discrimination and retaliation on a continuing basis commencing in September of 2022 and continuing to the present time." *Id.* ¶ 12.

### B. Andrew Payne

Plaintiff Andrew Payne, Brigid Payne's husband, has worked for DES for 18 years. *Id.* ¶ 55. In January or February of 2023, Mr. Payne reported Boyce's sexual harassment of Mrs. Payne

to the DES Chief Supervisor and Defendant Mignogna and explained he was experiencing problems "working at DES due to his wife's sexual harassment." *Id.* ¶ 58. Then, on August 15, 2023, Mr. Payne complained to Boyce about his misconduct toward Mrs. Payne. *Id.* ¶¶ 43, 45. Mr. Payne alleges that in retaliation for these complaints, he was denied promotions and certain work opportunities, despite his long tenure with the County and his qualifications. *Id.* ¶¶ 1, 62, 78, 85, 87, 93.

On or about June 2, 2024, Mr. Payne dual-filed a charge of discrimination with the EEOC and PHRA, claiming "retaliation on a continuing basis for his complaints of sex discrimination and harassment with respect to his wife commencing in September of 2022 and continuing to the present time." *Id.* ¶ 14.

### C. Related Cases

Three other cases have been filed raising similar allegations concerning Boyce's treatment of women in the workplace. *See Kahler v. Cnty. of Delaware*, 24-5219; *Bonsall v. Cnty. of Delaware, et al.*, 24-5866; and *Senkow v. Taylor*, 24-5219. On May 29, 2025, this Court consolidated *Kahler*, *Bonsall*, and *Payne* for purposes of discovery only. ECF No. 16. On September 29, 2025, this Court issued an opinion granting in part and denying in part Defendants' motion to dismiss in *Kahler v. County of Delaware* ("*Kahler* Opinion"). No. 24-5219, 2025 WL 2778092 (E.D. Pa. Sept. 29, 2025). The *Kahler* claims are nearly identical to several of the claims the Paynes raise, as are the Parties' arguments. Therefore, where appropriate and as set forth below, this Court relies on and incorporates the *Kahler* Opinion's reasoning.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims that fail to state a claim upon which relief may be granted. To survive a motion to dismiss, a complaint must contain sufficient facts that, when accepted as true and considered in the light most favorable

to the plaintiff, state a facially plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Lewis v. Atlas Van Lines, Inc.*, 542 F.3d 403, 405 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action will not do. . . . [A] complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–32 (3d Cir. 2008) (citation modified).

**III.    Discussion**

**A.  Count I: Brigid Payne's Section 1983 Substantive Due Process Claim**

Brigid Payne's Count I almost exactly mirrors Count I in *Kahler*. Mrs. Payne claims Defendants violated her right to bodily integrity as guaranteed by the substantive due process clause of the Fourteenth Amendment. Like in *Kahler*, Mrs. Payne asserts two theories of liability: a claim based on the state-created danger doctrine, and a *Monell* claim based on the County's unconstitutional customs and policies.

Under 42 U.S.C. § 1983, an individual may hold liable any person who deprives them of their constitutional rights while acting under color of state law. *See Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). A municipality and its officials have an affirmative duty to protect members of the public against private harm only where a special relationship exists or where a state-created danger caused the plaintiff's harm. *Johnson v. City of Phila.*, 975 F.3d 394, 398–99 (3d Cir. 2020).

A state-created danger claim requires facts showing: (1) the plaintiff's harm was "foreseeable and fairly direct"; (2) "action marked by 'a degree of culpability that shocks the conscience'"; (3) a relationship between the state and plaintiff making the plaintiff "a foreseeable victim"; and (4) "an affirmative use of state authority in a way that created a danger, or made others more vulnerable than had the state not acted at all." *Id.* at 400. As discussed in the *Kahler* Opinion,

5

Mrs. Payne has not stated a state-created danger claim because she has not pled any affirmative acts by Individual Defendants that "created or increased the risk" of harm, and "their failure to report, investigate, or stop Boyce's conduct did not 'create[] a new danger' or render [Mrs. Payne] 'more vulnerable to danger than had the state not acted at all.'" 2025 WL 2778092, at *5 (first alteration in original) (first quoting *Morrow v. Balaski*, 719 F.3d 160, 179 (3d Cir. 2013); and then quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)). Instead, she alleges Individual Defendants failed to investigate or report Boyce's misconduct. A passive failure to act is insufficient to invoke the state-created danger doctrine. *See id.* Accordingly, to the extent Count I asserts a state-created danger claim, it must be dismissed.

To hold a municipality liable for a constitutional violation by its employees or agents, a plaintiff must allege the violation resulted from a municipal policy, custom, or deliberate indifference. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). With respect to whether Mrs. Payne asserted a constitutional violation, Defendants argue only that she did not sufficiently plead a state-created danger; they do not otherwise argue the alleged harassment she experienced does not rise to the level of a violation of her constitutionally protected right to bodily integrity.

Mrs. Payne need not satisfy the state-created danger doctrine to establish a constitutional violation under *Monell*. *See Kahler*, 2025 WL 2778092, at *5. Moreover, like in *Kahler*, Mrs. Payne has sufficiently stated a *Monell* claim based on her allegations pertaining to County custom or policy that caused her injury. *See id.* at *6. But because the County is the proper defendant in her *Monell* claim, "the suit against the officers in their official capacities is redundant." *Id.* at *7 (quoting *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006)). Mrs. Payne's *Monell* claim in Count I is, thus, dismissed with prejudice against the County Council and Individual Defendants in their official capacities, but it may proceed against the County. *See id.*

### B. Count II: Andrew Payne's Section 1983 First Amendment Retaliation Claim

Andrew Payne asserts Defendants have retaliated against him for speaking out about the sexual harassment his wife experienced. ECF No. 9 ¶¶ 7, 144. Mr. Payne's statements for which he alleges retaliation fall into two categories: (1) complaints about Boyce's sexual harassment of his wife Brigid, and (2) complaints about opportunities he did not receive at work. Defendants first argue County policy required Mr. Payne to report the sexual harassment of his wife. Accordingly, they argue those reports were made pursuant to his official duties and are therefore not protected speech. ECF No. 10 at 14–15. Second, Defendants argue that complaints about employment opportunities are matters of purely private concern and are, likewise, not protected speech. *Id.*

A public employee is protected from retaliation for exercising his right to free speech, but not all his speech is protected. *See Jorjani v. N.J. Inst. of Tech.*, 151 F.4th 135, 140–41 (3d Cir. 2025). "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). It is well established that a public employee asserting First Amendment retaliation must allege: (1) he spoke as a private citizen, as opposed to pursuant to his official duties; (2) the speech was on a matter of public concern, not just a matter of personal interest; and (3) the employer did not "have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made." *Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009) (internal quotation marks and citations omitted). Defendants argue Mr. Payne has failed to establish the first two elements. For the below reasons, this Court disagrees.

#### 1. Speech by a Private Citizen

A public employee's speech is only protected when he speaks as a private citizen, not when his statements are made pursuant to his official duties. *Garcetti*, 547 U.S. at 421 ("[W]hen public

employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."); *see also Starnes v. Butler Cnty. Ct. of Common Pleas*, 971 F.3d 416, 429 (3d Cir. 2020) ("A public employee speaks as a citizen when she makes her statement outside the scope of her official duties."). To determine whether an employee's speech is made outside the scope of his official duties, courts must look to "the content, form, and context of a given statement, as revealed by the whole record." *Hill v. Borough of Kutztown*, 455 F.3d 225, 242 (3d Cir. 2006) (quoting *Rankin v. McPherson*, 483 U.S. 378, 384 (1987)). That is not to say, however, that this determination cannot be made at the motion to dismiss stage. For instance, *Hill* determined a plaintiff was speaking pursuant to his official duties when the complaint conceded that he reported misconduct "*as part of his duties as Manager*." *Id.* In contrast, however, where the complaint did not indicate whether the statements at issue were made as part of the plaintiff's "official duties," the Third Circuit declined to decide, at the motion to dismiss stage, whether the speech was private or "official." *Id.*

Here, Defendants argue Mr. Payne's reports of his wife's sexual harassment were made pursuant to his official duties because County policy required him to report workplace sexual harassment. ECF No. 10 at 16. The Amended Complaint, however, contains no allegations that Mr. Payne reported the harassment because his job responsibilities required him to do so. To the contrary, the Amended Complaint asserts that County custom discouraged such reports. *See, e.g.*, ECF No. 9 ¶ 100. And this Court finds it reasonable to infer, based on the allegations in the Amended Complaint, that Mr. Payne reported Boyce's misconduct as a private citizen. *See Hill*, 455 F.3d at 242; *see also Starnes*, 971 F.3d at 429 (finding plaintiff spoke as a private citizen in filing EEOC charge of sexual harassment and retaliation by a judge and probation office).

### 2. Speech on a Matter of Public Concern

To establish his speech was protected, a public employee must next show the speech addressed a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 147 (1983). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of [the] statement, as revealed by the whole record." *Id.* at 147–48. "[T]he key to the 'public concern' inquiry is 'whether expression of the kind at issue is of value to the process of self-governance.'" *Montone v. City of Jersey City*, 709 F.3d 181, 193 (3d Cir. 2013) (quoting *Azzaro v. Cnty. of Allegheny*, 110 F.3d 968, 977 (3d. Cir. 1997)). Courts should consider whether the statement relates to political, social, or other community concerns, *Connick*, 461 U.S. at 146, and whether it is "a subject of general interest and of value and concern to the public," *City of San Diego v. Roe*, 543 U.S. 77, 84 (2004). Also relevant to the analysis, though not dispositive, is the employee's motivation for speaking. *Munroe v. Central Bucks Sch. Dist.*, 805 F.3d 454, 467 (3d Cir. 2015).

Sexual harassment is a matter of public concern where the communications bring "to light actual wrongdoing on the part of one exercising public authority that would be relevant to the electorate's evaluation of the performance of the office of an elected official." *Azzaro*, 110 F.3d at 978–79. But sexual harassment complaints are not per se matters of public concern. *Id.* at 980. For example, in *Azzaro*, the Third Circuit found that complaints of sexual harassment by the executive assistant to County Commissioner "should be regarded as a matter of public concern unless something in their form or context deprived them of their value to the process of self-governance." *Id.* at 978–79. Even though the plaintiff had a solely private motivation for complaining, the Court found that this motivation "would not cause a citizen engaged in an evaluation of the Commissioner's office to disregard or discount her complaint." *Id.* at 979. The Court noted,

9

however, that that complaints of "inappropriate conduct on the part of a non-supervisory co-worker . . . would presumably be less important to an evaluation of the performance of the public office involved." *Id.* at 978 n. 4.

In contrast, "speech that relates solely to an employee's own employment matter . . . , including grievances regarding 'working conditions, pay, discipline, promotions, leave, vacations, and terminations,'" is not speech on a matter of public concern. *Bussinelli v. Twp. of Mahwah*, No. 23-21519, 2025 WL 1112831, at *4 (D.N.J. Apr. 15, 2025) (quoting *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 391 (2011)); *see also Munroe*, 805 F.3d at 467 ("[S]peech that relates solely to mundane employment grievances does not implicate a matter of public concern.").

Additionally, a First Amendment retaliation claim is not precluded merely because the speech was made in private. Public employees have a right to speak on matters of public concern "in private exchanges between two individuals as well as in exchanges between an individual and members of the public." *Azzaro*, 110 F.3d at 977–78. "[I]f the content and circumstances of a private communication are such that the message conveyed would be relevant to the process of self-governance if disseminated to the community, that communication is public concern speech even though it occurred in a private context." *Id.* at 978; *see also Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16 (1979) ("Neither the [First] Amendment itself nor our decisions indicate that [the] freedom [of speech] is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public.").

Here, in January or February of 2023, Mr. Payne reported Boyce's sexual harassment of Mrs. Payne to the DES Chief Supervisor and Defendant Mignogna, "set[ting] forth the problems that [Mr. Payne] was experiencing working at DES due to his wife's sexual harassment." ECF No. 9 ¶ 58. Mignogna repeatedly responded, "What do you want me to do about it?" *Id.* Then, on

August 15, 2023, Mr. Payne complained directly to Boyce about his improper conversations with his wife. *Id.* ¶¶ 43, 45. Mr. Payne alleges that following these complaints, he was denied promotions and certain work opportunities. *See id.* at 16–17. Mr. Payne also complained to his superiors about those denials and other concerns related to his employment.

Mr. Payne's complaints about his employment are not matters of public concern. *See Borough of Duryea*, 398–99. But at this stage, this Court cannot conclude that his complaints about Boyce's sexual harassment of Mrs. Payne did not address a matter of public concern. Boyce was the Director of DES, a position that is appointed and approved by the elected members of the County Council. *See* ECF No. 9 ¶ 119. This is not a situation involving an isolated incident of inappropriate conduct by a non-supervisory co-worker, which may not rise to the level of a public concern. *Azzaro*, 110 F.3d at 978 n. 4. Rather, like complaints of sexual harassment by a County Commissioner's executive assistant, complaints of sexual harassment by an appointed DES Director likely "would be relevant to the electorate's evaluation of the performance of the office of an elected official"—*i.e.*, the members of the County Council who appointed Boyce and will continue appointing his successors. *Azzaro*, 110 F.3d at 978; *compare Zelinski v. Pa. State Police*, 108 F. App'x 700, 707 (3d Cir. 2004) (finding informal complaint of sexual harassment by non-supervisory co-worker who did not work directly under elected official was not protected speech because conversation had "little or no 'instrumental value to the community in enabling self-governance'" (quoting *Azzaro*, 110 F.3d at 977)).

This Court notes that Mr. Payne alleges he complained of "the problems *that he was experiencing* working at DES due to his wife's sexual harassment by Boyce . . . ." ECF No. 9 ¶ 58 (emphasis added). But that was not the only report of sexual harassment for which he claims he suffered retaliation. Whether Mr. Payne's statements were reports of sexual harassment that would

11

amount to matters of public concern or complaints about Mr. Payne's personal issues with his employment should be determined based on a more complete record that can shed light on "all of the surrounding circumstances." *Montone*, 709 F.3d at 194. At this stage, this Court accepts the alleged facts as true and draws all reasonable inferences from those facts in the light most favorable to the plaintiff. *Phillips*, 515 F.3d at 233. In doing so, this Court finds it reasonable to infer that by complaining to his superiors of sexual harassment by the Director of DES, Mr. Payne spoke on a matter of public concern.

Accordingly, the Motion to Dismiss is denied with respect to Count II.

### C. Count III: Brigid Payne's Title VII Claim

In Count III, Mrs. Payne asserts three claims—sex-based discrimination, retaliation, and hostile environment—under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Defendants argue Mrs. Payne's Title VII claims are time-barred because she failed to timely exhaust her administrative remedies under Title VII. ECF No. 10 at 17. Mrs. Payne filed her EEOC charge on June 2, 2024. ECF No. 9 ¶ 12. Defendants argue the last alleged harassment by Boyce occurred on September 26, 2022, more than 300 days before she dual-filed her EEOC charge. They also argue that, with respect to any acts occurring within the 300-day limitations period, Mrs. Payne does not allege the retaliatory acts were taken because of her sex. ECF No. 10 at 18.

To establish a timely claim under Title VII in a state with a discrimination statute, like Pennsylvania, a plaintiff must file a charge with the EEOC no more than 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

1.  **Discrimination and Retaliation Claims**

A discrete act of discrimination or retaliation is time-barred if not filed with the EEOC within 300 days of the date of the act, even if the discrete acts "are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113. Mrs. Payne filed a charge with the EEOC on June 2, 2024. The applicable limitations period, therefore, begins 300 days earlier, on August 7, 2023. Defendants correctly argue that any discrete acts of discrimination or retaliation before August 7, 2023, are time barred. Mrs. Payne invokes the "continuing action" doctrine to try to save her claims. ECF No. 17 at 21. But the "continuing action" doctrine does not apply to discrete acts of discrimination and retaliation. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 113–14. Accordingly, any discrete discriminatory or retaliatory acts, including the sexual harassment by Boyce, that occurred before August 7, 2023 (300 days before she filed her EEOC charge) are time-barred.

Nonetheless, Mrs. Payne does allege a number of actions occurring after August 7, 2023, that Defendants took in retaliation for Mrs. Payne "standing up for herself and reporting misconduct to her superiors." ECF No. 9 ¶¶ 41, 46–50, 155. Defendants argue Mrs. Payne does not allege these denials of opportunities were "because of her sex." ECF No. 10 at 16. But so long as the adverse employment actions were taken in retaliation for Mrs. Payne's protected activity, the fact that the retaliatory actions were not alleged to be "because of her sex" is not fatal to her claim.

To state a Title VII claim for retaliation, a plaintiff must show: "(1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Farrell v. Planters Lifesavers*

*Co.*, 206 F.3d 271, 279 (3d Cir. 2000). An employee engages in protected activity when she "oppos[es] the employer's discriminatory conduct or . . . bring[s] or support[s] an action arising from the employer's discriminatory conduct." *Hallman v. PPL Corp.*, No. 11-cv-02834, 2014 WL 349714, at *5 (E.D. Pa. Jan. 31, 2014); 42 U.S.C. § 2000e–3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . .").

Here, it is undisputed that the Amended Complaint alleges retaliation for reporting Boyce's misconduct to supervisors. Mrs. Payne specifically reported an incident involving Boyce commenting on her chest and asking her to bend over and "let me see," as well as inappropriate and uninvited conversations about her sexual experience. ECF No. 9 ¶¶ 30–35. She alleges the subsequent denials of opportunities were retaliation for these complaints. Accordingly, the retaliatory actions taken after August 7, 2023 are actionable. Any discrete retaliatory acts taken before that date, however, are not.

Accordingly, Mrs. Payne's discrimination and retaliation claims are dismissed with prejudice with respect to any conduct occurring before August 7, 2023, but her retaliation claim may proceed with respect to the alleged retaliation that occurred after August 7, 2023.

    2. **Hostile Environment Claim**

Mrs. Payne also alleges she was subjected to a hostile work environment. Defendants do not argue she has failed to allege the elements of a hostile environment claim nor do they respond to Mrs. Payne's argument that the continuing action doctrine applies to this claim.

A plaintiff claiming she was subjected to a hostile environment may invoke the continuing violation doctrine to aggregate "discriminatory acts that are not individually actionable" and that occur both within and outside the limitations period, "so long as they are linked in a pattern of

actions which continues into the applicable limitation periods." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3rd Cir. 2013). "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Id.* at 165–66; *see also Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 566 (3d Cir. 2017) ("All the alleged acts, however, must be part of the same unlawful employment practice, . . . meaning they involved 'similar conduct by the same individuals, suggesting a persistent, ongoing pattern.'" (citation omitted)).

Discrete acts, like dismissals or denials of opportunities, that are actionable on their own "cannot simultaneously support a hostile environment claim." *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 566 (3d Cir. 2017) (finding dismissal was "discrete act actionable on its own as retaliation" and subsequent appearance at appeal hearing did not involve sexualized comments or sexual harassment so appeal appearance was not "sufficiently similar" to earlier, time-barred "conduct to plausibly invoke the continuing-violation doctrine" under Title IX); *compare Mandel*, 706 F.3d at 161, 167 (applying continuing violation doctrine where plaintiff was called a "bitch" during a meeting within limitations period and previous conduct included comments on plaintiff's body, name calling like "woman," "darling," "missy," and "toots," and being solicited for dates and propositioned for sex).

Mrs. Payne bases her hostile environment claim on "sexually harassing behavior as well as gender-based animosity, including sexist comments," "verbal and physical abuse by Tim Boyce and his successors," and "remarks that intimidate, ridicule and maliciously demean the status of women." ECF No. 9 ¶¶ 153–54. None of the allegations that occurred within the limitations period involve "sufficiently similar" conduct to the alleged sexually harassing behavior, sexist comments, or abuse by Boyce that would allow Mrs. Payne to invoke the continuing violation doctrine. *See*

ECF No. 9 ¶¶ 41 (on August 15, 2023, Mrs. Payne required to meet "impossible benchmark" to continue assisting with Active Shooter trainings), 46–47 (on August 17, 2023, Mrs. Payne moved from 911 Quality Assurance department to Homeland Security/Emergency Management, after which Defendant Mignogna commented on abruptness of her departure), 48–49 (on February 22, 2024, Mrs. Payne relays difficulties with responsibilities piling up and is subsequently transferred to a different supervisor and removed from program), 51 (On October 21 and 24, Mrs. Payne complains of supervisor "bullying women" and is required to attend "intimidating, entirely inappropriate, and unprofessional" meeting); *see also Doe*, 850 F.3d at 566. Additionally, the conduct within the limitations period involved discrete acts of retaliation or discrimination that would be actionable on their own and cannot "simultaneously support a hostile environment claim." *Doe*, 850 F.3d at 566.

Accordingly, Mrs. Payne cannot aggregate the acts under the continuing violation doctrine, and her hostile environment claim is dismissed without prejudice.

### D. Counts V–VII: State Law Tort Claims

In Counts V and VI, the Paynes bring negligence and negligent supervision claims against various defendants. For the same reasons as explained in the *Kahler* Opinion, the claims against the County, County Council, and Individual Defendants in their official capacities must be dismissed with prejudice because they are immune from liability under the Political Subdivision Tort Claims Act ("PSTCA"). *See Kahler*, 2025 WL 2778092, at *8. Also for the reasons put forth in the *Kahler* Opinion, the negligence and negligent supervisions claims against Individual Defendants in their individual capacities are dismissed without prejudice because Plaintiffs have not pled or argued that Individual Defendants' alleged negligence rose to the level of "willful misconduct." *See id.* at *9.

In Count VII, the Paynes raise an intentional infliction of emotional distress ("IIED") claim against Edward Beebe in his individual and official capacities and Delaware County. Defendants move for dismissal of this claim against the County and Edward Beebe in his official capacity. ECF No. 10 at 19. The County is immune from suit under the PSTCA, as is Beebe in his official capacity. *See Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 424–25 (E.D. Pa. 2000). The PSTCA provides that municipalities and local agencies shall not "be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S.A. § 8541. Municipal agency employees are also immune "to the same extent as his employing local agency," *id.* § 8545, unless the alleged tort involved "a crime, actual fraud, actual malice or willful misconduct," 42 Pa. C.S.A. § 8550. However, that exception applies only to suits against municipal employees in their individual capacity. *See Smith*, 112 F. Supp. 2d at 424–25, 427–28 (dismissing intentional tort claims against local agencies and official in official capacity but allowing IIED claims to proceed against school district employees in their individual capacity). So, the motion must be granted with respect to the County and Beebe in his official capacity.

This Court notes, however, that Beebe is not immune from liability in his individual capacity for IIED. *Id.* The PSTCA does not protect public employees from liability in their personal capacity where the alleged torts involved "malicious or willful conduct." *Cornell Cos., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 277 (E.D. Pa. 2007); 42 Pa. C.S.A. § 8550. "'[W]illful misconduct' in this context has the same meaning as the term 'intentional tort.'" *Bright*, 443 F.3d at 287 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001)). So, as an intentional tort, an IIED claim "by its very nature, is a claim of willful misconduct," and may be pursued against municipal employees in their individual capacities. *Cappel v. Aston Twp. Fire*

17

*Dep't*, 693 F. Supp. 3d 467, 495–96 (E.D. Pa. 2023) (denying motion to dismiss IIED claim against employees in individual capacity). Accordingly, the Paynes' IIED claim may proceed against Beebe in his individual capacity.[2]

### E. Counts VIII and IX: PHRA Claims

The Paynes each dual-filed claims with the EEOC and PHRC on June 2, 2024. ECF No. 9 ¶¶ 12, 14. On October 7, 2024, Plaintiffs each requested a right to sue letter from the EEOC, causing the EEOC to close its review of the matters. *Id.* ¶¶ 13, 15. The Department of Justice issued right to sue letters on October 29, 2024. *Id.* The Paynes then filed their Complaint on January 17, 2025, ECF No. 1, and an Amended Complaint on April 30, 2025, ECF No. 9. For the same reasons discussed in the *Kahler* Opinion, the Court dismisses the Paynes' PHRA claims without prejudice because they did not exhaust their administrative remedies. *See Kahler*, 2025 WL 2778092, at *7–8 (discussing PHRA's requirement that plaintiff allow PHRC one year to resolve administrative complaint before exhausting judicial resources but noting courts in this circuit have adopted a more flexible approach). Specifically, the Paynes invoked the PHRA's procedures, then filed this lawsuit before allowing the PHRC one year to resolve their administrative claims. *See* 43 P.S. § 962(c)(1); *see also McCreary v. Adult World, Inc.*, 729 F. Supp. 3d 458, 466–67 (E.D. Pa. 2024) (dismissing PHRA claim without prejudice because plaintiff's claims are barred "during the PHRC's one year conciliation period").

---

[2] Defendants do not argue the Paynes have failed to sufficiently plead the elements of an IIED claim. *See* ECF No. 10 at 21–22. "[U]nder Pennsylvania law to support a claim of intentional infliction of emotional distress a plaintiff must allege conduct that: (1) is extreme and outrageous; (2) is intentional or reckless; and, (3) causes severe emotional distress." *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 427 (E.D. Pa. 2000). Extreme and outrageous conduct has been found "only where the conduct at issue has been 'atrocious' and 'utterly intolerable in a civilized community.'" *Id.* at 428 (quoting *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236, 1238 (Pa. Super. Ct. 1981)).

## IV. Conclusion

For the foregoing reasons, this Court dismisses with prejudice Count I against the County Council and Individual Defendants in their official capacities, and this Court dismisses without prejudice Count I against Individual Defendants in their individual capacities. Count I may proceed against the County based on its *Monell* claim. The Motion is denied insofar as it seeks dismissal of Count II. Count III may proceed with respect to the retaliation claim for acts taken after August 7, 2023, but any claims pertaining to discrete acts of discrimination or retaliation before August 7, 2023, are dismissed with prejudice. Count III's hostile environment claim is dismissed without prejudice. The Court dismisses with prejudice Counts V, VI, and VII against the County, County Council, and Individual Defendants in their official capacities. The Court dismisses without prejudice Counts V and VI against Individual Defendants in their individual capacities. Count VII may proceed against Defendant Beebe in his individual capacity. Counts VIII and IX are also dismissed without prejudice.

An appropriate Order follows.